UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10172-RWZ

CAPITAL FINANCE, LLC and CAPITAL FUNDING, LLC

v.

22 MAPLE STREET, LLC
25 ORIOL DRIVE, LLC
59 COOLIDGE ROAD, LLC
20 KINMONTH ROAD, LLC
WABAN HEALTH CENTER, LLC
MERRIMACK VALLEY HEALTH CENTER, LLC
WATERTOWN HEALTH CENTER, LLC and
WORCESTER HEALTH CENTER, LLC

ORDER APPOINTING RECEIVER

March 21, 2018

ZOBEL, S.D.J.

This matter came before the court on the Motion (the "Motion") of Capital Finance, LLC (the "AR Loan Agent") and Capital Funding, LLC (the "Mortgage Loan Agent" and together with the AR Loan Agent, the "Agents") for Appointment of Receiver of 22 Maple Street, LLC; 25 Oriol Drive, LLC; 59 Coolidge Road, LLC; 20 Kinmonth Road, LLC (collectively, the "Owner Defendants" and, individually, an "Owner Defendant"); Waban Health Center, LLC; Merrimack Valley Health Center, LLC; Watertown Health Center, LLC and Worcester Health Center, LLC (collectively, the "Operator Defendants" and, individually, an "Operator Defendant").[1] On March

---

[1] On February 14, 2018, the Owner Defendants filed for protection under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq*. Accordingly, this Order does not appoint a receiver over the Owner Defendants.

9, 2018, the court entered a Memorandum of Decision (Docket # 35) (the "Receiver Decision") finding the appointment of a receiver of the Operator Defendants necessary.

Accordingly, it is ORDERED that:

1. KCP Advisory Group LLC, 2400 District Avenue, Suite 215, Burlington, MA 01803, by and through Jacen Dinoff, its Principal and Co-Founder, is hereby appointed receiver ("Receiver") of each of the Operator Defendants and all of Operator Defendants' assets (the "Receivership Assets"), with all of the powers and obligations set forth herein. The Receivership Assets do not include property of the Owner Defendants' bankruptcy estates in their respective bankruptcy cases pending in the United States Bankruptcy Court for the Eastern District of New York.

2. The Receiver shall take immediate possession and full control of all of the Receivership Assets and shall take such other actions as the Receiver deems reasonable and appropriate to effect this Order, to prevent waste, and to preserve, manage, secure, and safeguard the Receivership Assets in accordance with the powers granted herein.

3. Subject to the Budget (defined below), the Receiver shall have and may exercise the following powers, and such additional powers that are provided by law and that the court may from time to time direct or confer:

    a. take and maintain possession of all documents, books, records, papers, and deposit accounts relating to the Receivership Assets;

b. exclude the Operator Defendants, the Guarantors[2] and their respective agents, servants, and employees wholly from the Receivership Assets, except as necessary for the Operator Defendants to carry out their duties with respect to the Nursing Facilities' licenses;

c. execute and deliver, in the name of the Operator Defendants or in the Receiver's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized hereunder;

d. manage, operate, preserve and maintain the Receivership Assets as a prudent person would, including, without limitation, the power to enter into, terminate or negotiate contracts and make repairs or alterations to the Receivership Assets that the Receiver in its business judgment reasonably believes necessary for the management, operation, preservation and maintenance of the Receivership Assets;

e. enter into leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as the Receiver may deem appropriate or desirable to preserve the Receivership Assets;

f. employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors, or professionals as the Receiver may in its discretion deem appropriate or desirable to implement and effectuate the rights and powers herein granted;

g. engage attorneys or other professionals, as appropriate, in order to advise and assist the Receiver in carrying out its duties and appearing in court or other proceedings on its behalf;

---

[2] All capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Verified Complaint (Docket # 23).

h. collect the rents, accounts receivable, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits, proceeds, earnest money deposits and profits from the Receivership Assets, if any, from any time period whether historical, current or prospective, and receive any such assets presently in the possession of the Operator Defendants and/or their agents;

i. repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

j. sue for unpaid receivables, income, or proceeds in the name of the Operator Defendants;

k. subject to the Agents' prior written consent, compromise or give acquittance for receivables, income, or proceeds that may become due;

l. deal with issues and other matters with vendors, municipalities, and other governmental entities, as necessary;

m. open any mail intended for and/or directed to the Operator Defendants;

n. hire, fire, select, and retain employees of the Operator Defendants as the Receiver deems reasonable or necessary to preserve and maintain the value of the Receivership Assets, including as necessary or desirable to provide appropriate quality patient care;

o. upon prior written consent of the Agents, retain Next Step Healthcare, LLC as manager of the Nursing Facilities or hire a qualified replacement healthcare facility management company;

p. upon prior written consent of the Agents, hire a qualified company or individual to handle the Operator Defendants' back-office services;

q. with respect to taxes: (i) use all tax identification numbers of the Operator Defendants and cause to be filed all federal, state, and local income tax returns of the Operator Defendants for the period through termination of this receivership, including, without limitation, for the calendar years 2016, 2017 and thereafter; (ii) communicate with, negotiate with, and serve as nonexclusive representative of the Operator Defendants to all taxing authorities; provided, however, that the Receiver shall use reasonable efforts to keep all managers of the Operator Defendants apprised of all communications with taxing authorities by notice delivered to the address for such managers provided by each Operator Defendant; (iii) use reasonable efforts to issue all tax related forms on behalf of the Operator Defendants, including, without limitation, Internal Revenue Service Forms W-2, 1099, and K-1; and (iv) to the extent funds are available and authorized pursuant to the procedures set forth in this Order, pay taxes which may have been or may be levied against the Receivership Assets or which are otherwise due and payable with respect to the Receivership Assets, including, without limitation, payment of the provider taxes outstanding to the Commonwealth of Massachusetts, provided, however, that the Receiver is authorized to and may pay taxes which are or become due and payable which relate to the Receiver's custody, control or operation of the Receivership Assets for the period from the date of the entry of this Order through the date the Receivership is terminated and for which personal liability could be imposed;

r. take all actions necessary to maintain and/or transfer existing licenses, permits and authority from all relevant governmental agencies, managed care contracts, and third-party payor agreements, and to take all actions necessary to enroll or re-enroll the Nursing Facilities in any and all available state and federal subsidy and reimbursement programs, including but not limited to Medicare and Medicaid;

s. subject to the prior written consent of the Agents, conduct a marketing or leasing program with respect to all or a portion of the Receivership Assets, or employ a marketing or leasing agent or agents to do so, direct to the leasing or sale of all or portions of the Receivership Assets under such terms and conditions as the Agents may in their sole discretion deem appropriate or desirable, provided, however, that the Receiver shall seek court approval for any sale of Receivership Assets outside the ordinary course of business;

t. communicate and share information with prospective purchasers and provide the Agents with copies of such information;

u. in accordance with Paragraph 18 below, borrow monies from the Agents and the Lenders secured by a senior and paramount lien upon the Receivership Assets for the purposes of performing the Receiver's obligations under this or other orders of this court, and preserving or enhancing the value of the Receivership Assets, on terms and conditions agreed upon by the Agents and the Lenders;

v. take possession or control of all existing bank accounts, cash and funds belonging to or for the benefit of the Operator Defendants in bank accounts associated with the Receivership Assets (regardless from what time period), whether in the name of the Operator Defendants, or their agents or employees, and to open, transfer, and change all such bank accounts into the name of the Receiver, if appropriate, or otherwise take such actions as necessary to ensure such bank accounts are under the control of the Receiver and ensure Operator Defendants do not have access to such accounts without consultation with the Receiver, all in compliance with legal requirements; and

  w.  take all such further actions and enter into all such other agreements as the Receiver in its professional discretion deems appropriate or desirable to preserve, protect and maximize the value of the Receivership Assets.

  4.  The Operator Defendants shall have neither possession nor control of, nor any right to, the Receivership Assets or money or other proceeds derived from the Receivership Assets unless and until the receivership is terminated and the Receiver is discharged.  The Operator Defendants shall in all respects comply with this Order, and are hereby enjoined and restrained from impeding or interfering in any manner with the exercise by the Receiver of its rights, powers, and duties hereunder. From and after the date of this Order, neither the Operator Defendants, the Guarantors, nor any agents of the Operator Defendants or Guarantors shall enter into any lease, contract, or agreement of any kind or character relating to the Receivership Assets, and shall not grant any lien upon or security interest in the Receivership Assets.

  5.  Without the consent of the Receiver, none of the Operator Defendants, the Guarantors, or any agents of the Operator Defendants or Guarantors shall enter or be present at any of the Nursing Facilities, communicate in any manner with the employees or residents at the Nursing Facilities, or modify, terminate or cause to be modified or terminated any license, permit, lease, easement, contract or agreement, if any, relating to the Receivership Assets.

  6.  The Operator Defendants are hereby enjoined and restrained from collecting any revenues, receivables, proceeds, or other sums payable with respect to the Receivership Assets. Should the Operator Defendants, or any of their respective partners, affiliates, employees, members, shareholders, representatives, and agents come into possession of any such revenues, receivables, proceeds, or other sums subsequent to the date of entry of this Order, the Operator

Defendants, or their respective partners, affiliates, employees, members, shareholders, representatives, and agents shall promptly remit the same to the Receiver in the form received.

7. Neither the Operator Defendants nor anyone associated therewith or acting under the Operator Defendants' authority or control shall: (a) remove or destroy any property from the Nursing Facilities whether constituting Receivership Assets or otherwise; (b) terminate or cause to be terminated any license, permit, lease, contract, or agreement relating to the operation of the Nursing Facilities, including, without limitation, third-party payor agreements; (c) make any disparaging statement to residents, employees, or third parties regarding the Receiver or cause such persons or entities to resign, transfer to a new skilled nursing facility or refuse to deal with the Receiver; or (d) otherwise interfere with the Receiver in carrying out its duties under this Order and applicable law.

8. Until further order of this court, all tenants, bailees, or other persons in possession of the Receivership Assets or any portion thereof shall turn over such Assets to the Receiver, and until further order of this court (a) shall pay over to the Receiver, or its duly designated agent, all rents, revenues, receivables, proceeds, or other sums payable with respect to the Receivership Assets which are now due and unpaid or hereafter become due; and (b) they are hereby enjoined and restrained from paying to the Operator Defendants or their agents, officers, directors, employees, or attorneys any such rents, receivables, revenues, proceeds, or other sums.

9. Within five (5) calendar days from the entry of this Order, and thereafter, forthwith upon request of the Receiver (but no later than five (5) calendar days following such request), the Operator Defendants, Synergy Health Centers, LLC, and/or their respective agents and employees shall provide to the Receiver, make available to the Receiver, or cause their manager or employees to deliver or make available to the Receiver the following, to the extent such items and things exist:

a. all Receivership Assets and funds generated by or from the Receivership Assets, whether such funds are held in a collateral related account or not, including but not limited to: (i) all cash on hand; (ii) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); and (iii) all sums held in accounts in any financial institutions, including but not limited to (A) tenant/lessee security deposits received by the Operator Defendants from residents of the Nursing Facilities, (B) deposits held in escrow by the Operator Defendants for any purpose, such as for payment of real estate taxes and insurance premiums, (C) proceeds of insurance maintained for, or pertaining to, the Receivership Assets, (D) rent or prepaid rent from the residents of the Nursing Facilities, (E) funds designated or intended for capital improvements, repairs, or renovations to, or in connection with, the Receivership Assets, and (F) all other sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Receivership Assets;

b. copies of any and all service contracts pertaining to the Receivership Assets and/or to which the Operator Defendants are a party;

c. copies of any and all management contracts and/or agreements pertaining to the Receivership Assets and/or to which the Operator Defendants are a party;

d. copies of any and all leases, lease abstracts, purchase agreements and the like pertaining to the Receivership Assets and/or to which the Operator Defendants are a party;

e. all open invoices for services or goods relating to the Receivership Assets and/or to which the Operator Defendants are a party;

f. all records evidencing the Operator Defendants' accounts receivable, and any and all agreements, documented and undocumented, with any creditor, respecting any payment plan or agreement, demand, or suit;

g. copies of the 2015, 2016, and 2017 year-end and 2018 year-to-date, in both full and summary format, financial statements (and month by month detail) for each Operator Defendant and on a consolidated basis, in both hard copy and electronic formats; balance sheets, income statements, accounts receivables (and receivables/arrearages aging), operating statements, current year budgets, sources and uses of cash flows, detailed rent rolls, accounts payable, check registers, security deposit listings, trial balances, general ledgers, contractor statements, lien waivers, sworn owner statements, construction draws, bank reconciliations, and bank statements, including any passwords which may be associated with any financial documents or accounts and copies of borrowing base certificates or similar submissions for the prior six (6) loan requests;

h. a complete set of keys (including all masters) and all security and/or access codes and/or cards to the Nursing Facilities and a schedule (including full contact information) identifying each person or entity (including security companies, municipal/governmental agencies and utility companies), who currently has one or more keys and/or access cards to the Nursing Facilities or who has knowledge of any access codes thereto;

i. any and all records and information the Operator Defendants or Synergy Health Centers, LLC or their agents, affiliates or employees may have concerning the Receivership Assets for each Operator Defendant and on a consolidated basis as applicable, including without limitation all written and electronic books, records, correspondence, and other information (including any computer hardware or software login and password information) related to: (i) any agreements to which the Operator Defendants and/or the Receivership Assets are or may be subject; (ii) any amounts received from the residents or other tenants of the Nursing Facilities, including resident funds, including revenue by payor type for each of the prior two fiscal quarters; (iii) all liens or other encumbrances on the Receivership Assets or against the Operator Defendants;

(iv) taxes, assessments and related appeals; (v) insurance of all types for the Operator Defendants (including, but not limited to, liability, property, excess liability, auto liability, boiler and machinery, business interruption, professional liability, employee dishonesty, builders risk, construction related insurance and worker's compensation) including information regarding insurance which may be issued to any defendant; (vi) all invoices for services at the Nursing Facilities; (viii) all resident and other tenant files, including leases, lease abstracts, purchase agreements, and sample leases; (ix) all marketing information (in hard copy and electronic format) including but not limited to brochures, photographs (including aerial), maps, and signage; (x) copies of all state and federal tax returns signed and filed by the Operator Defendants for calendar years 2015, 2016 and 2017; (xi) all state survey results and correspondence with any regulators; and (xii) all other records related to the Receivership Assets that are or may be necessary or pertinent to the Receiver's management, maintenance, operation and/or sale of the Receivership Assets;

j. any and all insurance loss histories and/or claims related to the Receivership Assets and/or the Operator Defendants;

k. all property and all other things of value associated with use, operation and maintenance of the Receivership Assets; and

l. all correspondence with regulators and/or licensing entities regarding the Receivership Assets.

10. By this Order, the Receiver shall be deemed a business associate of the Operator Defendants pursuant to the Health Information Portability and Accountability Act and its implementing regulations.

11. The Operator Defendants shall cause, and Receiver shall be authorized on the Operator Defendant's behalf to cause, the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Assets. Subject to the prior written consent of the Agents and in accordance with the Budget (as defined in paragraph 15 below), the Receiver may obtain insurance covering the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Assets.

12. The Operator Defendants shall at all times after the entry of this Order provide full cooperation to, and shall not in any way interfere with, the Receiver in carrying out its duties hereunder, and shall timely respond to all reasonable requests made by the Receiver. The Operator Defendants' obligations pursuant to this Order shall be continuing. Neither the Operator Defendants nor anyone associated therewith or acting under their authority or control shall in any way directly or indirectly impair the value of the Receivership Assets or interfere with the Receiver in the exercise of its duties pursuant to this Order.

13. The Operator Defendants' deposit accounts (collectively, the "<u>Deposit Accounts</u>") and current cash management system shall remain in place, and the Receiver shall deposit all proceeds of receivables, all other cash collections and all other proceeds of the Receivership Assets into the Operator Defendants' operating, payroll or other accounts maintained at CFG Community Bank, and the Receiver is authorized to open and maintain appropriate business accounts for the Receivership Assets at CFG Community Bank. The Receiver is authorized to utilize the Operator Defendants' cash management system in accordance with and subject to the terms of this Order. All deposit account agreements, blocked account agreements and similar bank account agreements that were in place prior to the entry of this Order shall remain in effect and are hereby ratified and

reaffirmed. The Receiver is authorized, and the Operator Defendants are directed, to take necessary or desirable actions to effectuate this arrangement.

14. Subject to the Budget (as defined in paragraph 15 below) and the other provisions of this Order, the Receiver shall pay, from the Receivership Assets, all such reasonable costs and expenses as shall be incurred by the Receiver in the ordinary course of business in connection with the operation, maintenance, management, protection, and preservation of the Receivership Assets, including, without limitation, reasonable expenses required to put the Receivership Assets in a rentable and/or saleable market-ready condition or otherwise necessary to realize the value thereof. None of the Receiver, the Agents or the Lenders shall be liable for any expenses incurred with regard to the Receivership Assets prior to the Receiver taking possession of the Receivership Assets, nor shall the Receiver, the Agents or the Lenders be required to use the Receivership Assets for payment of any expenses incurred with regard to the Receivership Assets prior to the date of this Order. Notwithstanding the foregoing, the Receiver may, in the Receiver's sole discretion, pay those expenses which were incurred in the normal and ordinary course of business of the Receivership Assets prior to the Receiver taking possession of the Receivership Assets if, and only if, (a) the Receiver determines that payment of any such pre-existing expense is necessary and critical to the ongoing operation, maintenance, management, protection, and preservation of the Receivership Assets; and (b) the Receiver has received the Agents' prior written consent. Except as provided in, and in all events in accordance with the immediately preceding sentence, no pre-existing expenses shall be paid by the Receiver. The Receiver shall not be required to perform under any contract or lease entered into prior to the date on which he assumes possession of the Receivership Assets. Notwithstanding the foregoing, the Receiver may, in the Receiver's sole discretion, perform under such contracts or leases.

15. The Receiver shall perform its obligations hereunder and make disbursements in accordance with, and subject to, the terms of this Order and the Budgets (as defined in this paragraph 15). Prior to the Receiver and the Agents' agreement on the Initial Budget, the Receiver shall submit disbursement requests to the Agents and disbursements may be made in the Agents' sole and absolute discretion. Within fourteen (14) calendar days of the entry of this Order, unless the Receiver and the Agents agree to another period of time, the Receiver shall deliver to the Agents a cash flow forecast for the Operator Defendants for the upcoming 13-week period (commencing with the calendar week in which the cash flow forecast is delivered to the Agents), in form and detail acceptable to the Agents (the "<u>Initial Budget</u>"). On Thursday of each calendar week after delivery of the Initial Budget (or the next succeeding business day if Thursday is not a business day), the Receiver shall regularly deliver a 13-week cash flow forecast (together with the Initial Budget, the "<u>Budgets</u>" and, individually, a "<u>Budget</u>") to the Agents. Each Budget shall (a) be prepared on a reasonable basis and in good faith, and based upon assumptions believed by the Receiver to be reasonable at the time made and upon the best information then reasonably available to the Receiver, and (b) be subject to review and written approval by the Agents. To the extent a proposed Budget is not approved, the Receiver may submit a revised Budget for the Agents' review and written approval, it being understood and agreed that the Receiver may not make any disbursements and the Agents shall have no obligation to fund any disbursements pursuant to this Order, the Loan Agreements or otherwise, if a Budget has not been approved for the week in which such expenses are to be disbursed. The Receiver shall not make disbursements in excess of those Budgeted Items (as defined in paragraph 17 below) listed in the Budget; <u>provided</u> that there shall be an allowed 10% variance to the cumulative aggregate amount of disbursements scheduled to be made during the period from the Initial Budget through and including the then-

current calendar week (*e.g.*, on a cumulative aggregate weekly Budgeted Item basis). Without limiting the foregoing, notwithstanding any relief granted in any other order entered by the court, the Receiver shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed and expressly included in this Order and the Budget. The Receiver may submit disbursement requests to the Agents for items not covered by an Approved Budget, and such disbursements may be made in the Agents' sole and absolute discretion. Copies of approved Budgets shall be emailed to counsel for the Operator Defendants.

16. The Operator Defendants shall continue to comply with their reporting requirements under the Loan Agreements following entry of this Order. To the extent the Operator Defendants fail to provide the reporting, the Receiver, in consultation with the Agents, shall use his best efforts to timely provide the reporting required under the Loan Agreements. The Operator Defendants are authorized and directed to provide all information as and when required by the Receiver to fulfill reporting obligations.

17. The Receiver shall deliver to the Agents and their counsel by 5:00 p.m. (Eastern time) on the first Wednesday of the calendar week after seven (7) days have passed after the approval of the first Budget, and on each Wednesday of each calendar week thereafter (in each case, for the immediately preceding calendar week) or at such time as otherwise agreed in writing by the Agents, in form and substance satisfactory to the Agents, a compliance report (the "<u>Compliance Reports</u>") documenting and detailing: (a) all cash receipts of the Operator Defendants and their operations; (b) all payments and disbursements made by the Receiver; (c) the updated weekly actual performance compared to the Budget on both an aggregate basis and a line-item by line-item basis (each particular line-item set forth on the Budget being referred to herein as a "<u>Budgeted Item</u>"), stating all variances and providing a narrative discussion and analysis by

the Receiver with respect to any and all negative variances; and (d) such other reports as the Agents may reasonably request from time to time. Compliance Reports shall be emailed to counsel for the Operator Defendants.

18. The Receiver shall have no obligation to expend funds in excess of the receipts actually collected or received by the Receiver. The Lenders shall have no obligation to provide funds to the Receiver. The Receiver is authorized to borrow funds from the Lenders at the Lenders' sole discretion and subject to the terms and conditions of the Loan Agreements. Any funds borrowed from the Lenders by the Receiver shall be secured by a first, valid and perfected lien and security interest in the Receivership Assets senior to all other liens and security interests in the Receivership Assets, which lien shall be valid and perfected without the necessity of recordation, filing, or any other act of the Agents or the Lenders, and the Receiver is authorized, but not required, to issue receivership certificate(s) to evidence and secure any such protective advances by the Lenders.

19. The liability of the Receiver and any person engaged by the Receiver hereunder is and shall be limited to the Receivership Assets, and neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be personally liable for any actions taken pursuant to this Order or carrying out the Receiver's duties, excepting only claims which arise from the willful misconduct of such person as determined by a final order of this or another court of competent jurisdiction.

20. The Receiver's compensation shall be on an hourly basis, plus expenses incurred, as agreed to by the Agents and provided for in the Budget. The Receiver's compensation shall be paid (a) in accordance with the Budget or as otherwise agreed upon in writing by the Receiver and the Agents; (b) first from the Receivership Assets including all monies or other proceeds derived

therefrom, and, next; (c) from secured advances, if any, that the Lenders, in their sole discretion in accordance with this Order, make to the Receiver to pay such fees and expenses, but only to the extent that the Receivership Assets are insufficient to pay the Receiver's compensation. The Receiver shall maintain records of its professionals' time. The Receiver shall include a report of its compensation in its filings with the court set forth in Paragraph 21 below.

21. The Receiver shall make an initial report to this court and to the Agents on or before thirty days from the entry of this Order regarding its initial findings and a second report to the court within sixty days thereafter. The Receiver shall thereafter submit an updated status report on a quarterly basis or as otherwise ordered by the court. Copies of all such reports shall be served upon all parties appearing in this case by the court's electronic filing system.

22. The Receiver may at any time request from the court that it be exonerated, discharged and released from its appointment as Receiver. The Receiver shall, during the pendency of this action, have the right to apply to this court for further instructions or directions.

23. As of the date of this Order, all persons and entities, including but not limited to the Operator Defendants' creditors and their respective officers, agents, representative and all other persons or entities acting under or in concert with such creditors are hereby placed on notice that all Receivership Assets are in *custodia legis,* and, as such, under the protection of this court, immune from attachment or other legal process, and subject entirely to control by the Receiver as this court's appointee.

24. The authority granted to the Receiver herein is self-executing. The Receiver is authorized to act in accordance with this Order on behalf of, and in the Operator Defendants' (or the Receiver's) name, as the Receiver deems appropriate without further order of this court and without personal recourse against the Receiver (subject to any recourse described herein).

25. This Order may be modified by order of the court after notice to the Receiver, the Operator Defendants and the Agents.

26. Nothing in this Order shall impair the Agents of their rights and remedies against the Guarantors of the loans at issue in this matter.

27. The court shall retain jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby and the Receivership Assets. Any and all actions which affect the Receiver or the Receivership Assets shall be brought in this court. The Receiver may seek instructions and additional authority from this court upon written notice to the Agents and the Operator Defendants.

| March 21, 2018 | /s/Rya W. Zobel |
|---|---|
| Date | Rya W. Zobel |
| | Senior United States District Judge |